U.S. Magistrate Judge S. Kate Vaughan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY ROBERT LAUCKS,<br><br>Defendant. | CASE NO.  MJ22-591<br><br>COMPLAINT for VIOLATIONS<br><br>Title 21, U.S.C. 841(a)(1), 841(b)(1)(A), 841(b)(1)(B);<br>Title 18, U.S.C. 922(g)(1), 924(c) |

BEFORE, The Honorable S. Kate Vaughan, United States Magistrate Judge, U. S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

### (Possession of a Controlled Substance with Intent to Distribute)

On or about November 4, 2022, in King County, within the Western District of Washington, TIMOTHY ROBERT LAUCKS did knowingly and intentionally possess, with the intent to distribute, methamphetamine a substance controlled under Title 21, United States Code.

It is further alleged that the offense involved 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

It is further alleged that the offense involved 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide and 10 grams or more of a mixture or substance containing a detectable amount of any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide.

All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B).

## COUNT 2

### (Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

On or about November 4, 2022, in King County, within the Western District of Washington, TIMOTHY ROBERT LAUCKS knowingly possessed a firearm, that is, a Smith and Wesson M&P .40 caliber semi-automatic handgun, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, *Possession of a Controlled Substance with Intent to Distribute*, as alleged in Count 1 above.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## COUNT 3

### (Unlawful Possession of a Firearm)

On or about November 4, 2022, in King County, within the Western District of Washington, TIMOTHY ROBERT LAUCKS, knowing he had been convicted of the following crimes punishable by a term of imprisonment exceeding one year:

i.      *Attempt to Elude*, in Whatcom County Superior Court, under case number 17-1-00459-9, on or about July 20, 2017; and

COMPLAINT/TIMOTHY ROBERT LAUCKS - 2
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        ii.    *Theft in the Second Degree*, in Skagit County Superior Court,

2  under case number 17-1-00440-4, on or about September 14, 2017;

3

4  did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that

5  is, a Smith and Wesson 9mm Shield semi-automatic handgun, that had been shipped and

6  transported in interstate and foreign commerce.

7        All in violation of Title 18, United States Code, Section 922(g)(1).

8        And the complainant states that this Complaint is based on the following

9  information:

10        I, Salvatore Giampapa, being first duly sworn on oath, depose and say:

11        **INTRODUCTION AND AFFIANT BACKGROUND**

12        1.    I am employed as a Special Agent (SA) with the United States Drug

13  Enforcement Administration (DEA) and have been so employed since August 2020. I am

14  currently assigned to the Seattle Field Division. In this capacity, I investigate violations

15  of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and

16  related offenses. I have received specialized training in the enforcement and investigation

17  of the Controlled Substance Act. I have received over 620 hours of classroom training

18  including, but not limited to, drug identification, drug interdiction, detection, money

19  laundering techniques and schemes, smuggling, and the investigation of individuals

20  and/or organizations involved in the illegal possession, possession for sale, sales,

21  importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled

22  substances. Prior to becoming a SA with the DEA, I was employed as an Officer in the

23  United States Coast Guard, from May 2015 to August 2020. In that capacity, I enforced

24  maritime law, responded to emergencies and preserved and protected people and

25  property. During this time, I was trained and involved in investigations of criminal

26  offenses including, but not limited to, narcotics, smuggling and DUI.

27

COMPLAINT/TIMOTHY ROBERT LAUCKS - 3
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      In my role as a SA for the Drug Enforcement Administration, I have participated in narcotics investigations (i.e., heroin, cocaine, marijuana, fentanyl and methamphetamine) which have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotic-related evidence and the forfeiture of narcotics related assets. I have been involved in the service of search warrants as part of these investigations. Because of my experience in serving these search warrants, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

3.      I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regard to these matters as well.

4.      In addition to practical experience, I have received formal training in controlled substances enforcement. This includes training regarding controlled substance recognition, field testing, undercover investigations, telecommunications analysis, surveillance techniques, financial investigations, and clandestine laboratories.

5.      I make this affidavit in support of this complaint based both on personal knowledge and on information I have obtained from a review of official reports prepared by other law enforcement officers and/or discussions with those officers.  Because this affidavit is made for the limited purpose of establishing probable cause to believe the defendant committed the offense alleged above, it does not contain all of my knowledge regarding the surrounding circumstances.

COMPLAINT/TIMOTHY ROBERT LAUCKS - 4
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF PROBABLE CAUSE

6.      On October 29, 2022, at 20:30 hours, Seattle Police Officer Thompson responded to investigate an auto theft call from victim W.F. that occurred at Seattle Children's Hospital located on Sand Point Way NE, Seattle, Washington.  Officer Thompson spoke with W.F., who reported his 2017 Toyota Corolla was stolen from the hospital parking garage that evening. W.F. reported his one year old son was having brain surgery and the Corolla contained belongings meant to sustain the family during their baby's operation and recoupation period which was estimated to be a period of one to three weeks.  Officer Thompson reviewed Children's Hospital surveillance footage which depicted a suspect wearing a gray hoodie, blue jeans, and a black backpack enter W.F.'s Corolla and drive away.

7.      On November 4, 2022, at 14:43 hours the Seattle Police Department Community Response Group was conducting a stolen vehicle recovery operation and had uniformed arrest team officers in patrol vehicles and plain clothes officers operating unmarked vehicles to effectuate the recovery of stolen cars. The operation occurred at a high crime area located at the 900 block of NW Ballard Way, Seattle, Washington.

8.      Officers Claxon and Frieler observed what was later determined to be W.F.'s stolen Corolla bearing a temporary dealer's license for a Hyundai.  The officers monitored the empty Corolla and at 15:00 hours observed TIMOTHY ROBERT LAUCKS enter the Corolla's driver side door and drive away.  Officers followed the Corolla for approximately forty minutes as it drove through Ballard, Freemont, and Queen Anne.  During this time, officers observed LAUCKS make multiple contacts with people at multiple locations and was observed presenting these individuals with a pizza style box.

9.      During a stop at a tiny home village, Officer Claxton observed a male and female passenger enter the Corolla and LAUCKS drove them to the QFC parking garage located at 500 Mercer Street, Seattle, Washington where LAUCKS backed the Corolla

COMPLAINT/TIMOTHY ROBERT LAUCKS - 5
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

into a parking spot.  The male passenger went into the QFC, while the female passenger and LAUCKS remained in the Corolla. When officers drove a marked patrol car in front of the Corolla and activated the emergency lights, LAUCKS put the car in drive and rammed the patrol car injuring the officers.  LAUCKS then fled on foot from the Corolla. Officers observed LAUCKS drop his backpack and a cellphone on the ground and then a loaded Smith and Wesson M&P .40 caliber semi-automatic handgun from his waistline before getting arrested by nearby officers.

10.     LAUCKS informed arresting officers that his name was "Timothy R. Cooke" though officers were able to quickly determine that name is an alias LAUCKS utilizes.  LAUCKS had an active Department of Corrections warrant for his arrest and was on supervision at the time of this incident.

11.     Officer Lentz located a camouflage jacket LAUCKS' dropped while attempting to flee and discovered a second loaded Smith and Wesson .40 caliber Shield semi-automatic handgun from LAUCK's inner left jacket pocket. That handgun had been reported stolen out of Redmond, WA. Officers searched LAUCKS' backpack and recovered the following evidence:

- 10.3 grams of Xanax tabs;
- 55.3 grams of blue fentanyl pills;
- 68.7 grams of fentanyl powder;
- 14.7 grams of fentanyl powder;
- 13.5 grams of cocaine;
- 17.9 grams of marijuana; and
- 907.1 grams of methamphetamine;[1]

Figure 1 below depicts the narcotics, cash, firearm, and ammunition seized from LAUCKS:

---

[1] Weights include packaging, if any.

COMPLAINT/TIMOTHY ROBERT LAUCKS - 6
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Figure 1*

12.     A total of $8,016 in United States currency was seized from LAUCKS'

jacket pocket and backpack. Additionally, two scales were recovered from the stolen

vehicle. I know based on my training and experience that it is common for drug dealers to

carry large amount of cash which is often proceeds from illicit narcotics sales.

Additionally, I know it is common for drug dealers to use scales to weigh out the illicit

narcotics for re-packaging into smaller amounts for sale.  All of the narcotics were field

COMPLAINT/TIMOTHY ROBERT LAUCKS - 7
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

tested with the Tru Narc machine and returned presumptive positive.[2] I also know from training and experience that narcotics traffickers arm themselves with firearms for a variety of reasons to include self-protection against robbery and assault, protection of narcotics, turf, and money because the drug traffickers are unable to contact law enforcement for assistance in light of their underlying criminal conduct in the event of robbery and/or assault.

13.     At 17:30 hours Officers Fowler and Clark conducted a recorded interview of LAUCKS following LAUCKS' waiver of his constitutional rights.  According to LAUCKS, approximately one week earlier his friend James' girlfriend was at Seattle Children's Hospital and found a car key that she used to steal a Toyota Corolla from the hospital.  LAUCKS ultimately bought the Corolla from James for $450.  LAUCKS explained that he later realized the Corolla was stolen from Children's Hospital after finding medical paperwork belonging to a sick child.  LAUCKS explained he intended to return the car, but became busy "making drops."

14.     LAUCKS admitted using the Corolla to pick up five pounds of methamphetamine and 2000+ M30 fentanyl pills.  LAUCKS explained that he was weighing drugs when Seattle Police Officers drove up and he became scared and accidentally stepped on the gas causing the Corolla to jolt forward hitting the patrol vehicle.  LAUCKS further admitted the cash seized incident to his arrest was mostly from narcotic sales.  LAUCKS then confessed to purchasing the two firearms for $500 each that he knew he was ineligible to legally possess.

15.     I reviewed LAUCKS' criminal history. Based upon my review of criminal history records, I have determined that LAUCKS has been convicted of multiple felonies rendering him ineligible to possess a firearm, including:

---

[2] On December 14, 2022, Investigators with the DEA took custody of the evidence in this case and found approximately 127.9 grams of suspected (untested) heroin in the backpack which was submitted into evidence.

1    *Attempt to Elude*, in Whatcom County Superior Court, under case

2 number 17-1-00459-9, on or about July 20, 2017; and

3

4    *Theft in the Second Degree*, in Skagit County Superior Court, under

5 case number 17-1-00440-4, on or about September 14, 2017;

6    16. On December 15, 2022, Bureau of Alcohol, Tobacco, Firearms and

7 Explosives SA Catherine Cole, a certified Interstate Firearms and Ammunition Nexus

8 Expert, who has been trained in the recognition of firearms and ammunition and their

9 origin of manufacture, reviewed photographs of a Smith and a Wesson M&P .40 caliber

10 semi-automatic handgun and Smith and Wesson M&P .40 Shield semi-automatic

11 handgun.  SA Cole determined that the firearms were not manufactured in the State of

12 Washington.  Based upon her experience, knowledge, and research, it is also SA Cole's

13 opinion that the above-listed firearms meet the definition of a firearm under Title 18,

14 United States Code, Section 921(a)(3).

15 //

16 //

17

18

19

20

21

22

23

24

25

26

27

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

17.   Based on the above facts, I respectfully submit that there is probable cause to believe that TIMOTHY ROBERT LAUCKS committed the offenses alleged in this Complaint.

Salvatore Giampapa, Complainant
Special Agent
Drug Enforcement Administration

The above-named Special Agent provided a sworn statement attesting to the truth of the foregoing by telephone on the 19th day of December, 2022.  Based on the Complaint and Affidavit sworn to before me, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this 19th day of December, 2022.

The Honorable S. Kate Vaughan
United States Magistrate Judge

COMPLAINT/TIMOTHY ROBERT LAUCKS - 10
Case No. 2022R01304

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101